**Not for Publication**

**UNITED STATES DISTRICT COURT**
**DISTRICT OF NEW JERSEY**

| | |
|---|---|
| UNITED STATES OF AMERICA, *Plaintiff*, v. GERMAINE H. KING, *Defendant*. | Crim. No. 18-379 **OPINION** |

**John Michael Vazquez, U.S.D.J.**

This matter comes before the Court by way of Defendant Germaine H. King's motion to modify his sentence and for immediate compassionate release. D.E. 193. The Government filed opposition, D.E. 196, to which Defendant replied, D.E. 197. The Court reviewed the parties' submissions[1] and considered the motion without oral argument pursuant to Local Criminal Rule 1.1 and Local Civil Rule 78.1(b). Defendant seeks immediate release due to the ongoing COVID-19 pandemic. For the following reasons, Defendant's motion is denied.

I.   **BACKGROUND**

   A.   **Underlying Criminal Proceedings**

In November 2018, a Second Superseding Indictment was returned against King and Daniel K. Dxrams. D.E. 83. King was charged with a conspiracy to commit bank and mail fraud in violation 18 U.S.C. § 1349, three counts of bank fraud in violation of 18 U.S.C. § 1344, a

---

[1] Defendant's brief in support of his motion is referred to as "Br." (D.E. 193); the Government's opposition brief is referred to as "Opp." (D.E. 196); Defendant's reply brief is referred to as "Reply" (D.E. 197).

conspiracy to commit mail fraud in violation of 18 U.S.C. § 1349, and ten counts of mail fraud in violation of 18 U.S.C. § 1341. *Id.* King went to trial, with jury selection starting on May 21, 2019 and the trial ending on June 20, 2019. D.E. 111-31. The jury found King guilty on all counts. D.E. 132. King was the originator of debt-relief schemes and brought others into the conspiracies. D.E. 178 at 33. The scheme used fraudulent money orders and cashier's checks to, among other things, purportedly pay off loans for luxury automobiles, mortgages, and credit card debt. *Id.* at 33-35. The Court sentenced King on January 7, 2020 to a term of 70 months' imprisonment on each count (each sentence to run concurrently) as well as 5 years of supervised release on 4 counts and 3 years on 11 counts (each period to run concurrently). D.E. 165, 166. The Court also ordered King to pay nearly $600,000 in restitution and directed him to forfeit over $450,000. *Id.*

On May 26, 2020, King sought to extend his reporting date, D.E. 182, which the Government opposed, D.E. 184, and the Court denied, D.E. 185. On June 4, 2021, King moved for reconsideration, D.E. 187, which the Government opposed, D.E. 188, and the Court denied, D.E. 189. King is currently housed at Fort Dix FCI in New Jersey, with a scheduled release date of April 1, 2025.

### B. COVID-19 Pandemic

COVID-19 "is caused by the virus severe acute respiratory syndrome coronavirus 2 (SARS-CoV-2), a new virus in humans causing respiratory illness which can be spread from person-to-person." *COVID-19*, "COVID-19 Overview and Infection Prevention and Control Priorities in non-US Healthcare Settings," Centers for Disease Control and Prevention (Feb. 26, 2021), https://www.cdc.gov/coronavirus/2019-ncov/hcp/non-us-settings/overview/index.html#background. "COVID-19 is primarily transmitted from person-to-person through respiratory droplets. These droplets are released when someone with COVID-19 sneezes, coughs, or talks."

*Id.* Persons who contract the virus reflect a wide range of symptoms from asymptomatic to mild (including fever, cough, nausea, chest pain, and body pain) to severe to critical (including respiratory failure and death). *Id.* As a result, standard precautions to prevent the spread of the virus include social distancing, proper hygiene, personal protective equipment (including use of a face mask), and maintenance of clean surfaces and devices. *Id.*

Numerous factors can increase a person's risk of severe illness if he/she contracts the virus. As a person get older, his/her risk for severe illness from COVID-19 increases. "COVID-19 Risks and Vaccine Information for Older Adults," Centers for Disease Control and Prevention (Aug. 2, 2021), https://www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions/older-adults.html. For example, persons in their sixties and seventies are at a higher risk than people in their fifties. *Id.* Those 85 or older are at greatest risk. *Id.* Adults 65 or older comprise 8 out of 10 COVID-19 deaths in the United States. *Id.* The following medical conditions put a person at increased risk of severe illness from COVID-19: cancer, chronic kidney diseases, chronic lung diseases (including asthma if it is moderate to severe), dementia or other neurological conditions, heart conditions such as coronary artery disease, weakened immune system from organ transplant, obesity, pregnancy, sickle cell disease, smoking, stroke or cerebrovascular disease, and type 2 diabetes mellitus. *COVID-19*, "People with Certain Medical Conditions," Centers for Disease Control and Prevention (Aug. 20, 2021),[2] https://www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions/people-with-medical-conditions.html.

As of August 23, 2021, the United States has had 37,583,545 COVID-19 cases, resulting in 625,375 deaths. *COVID Data Tracker*, Centers for Disease Control and Prevention,

---

[2] The CDC previously provided two separate lists, one listing conditions that entailed a greater risk of severe illness and one setting forth conditions that might involve a greater risk.

https://covid.cdc.gov/covid-data-tracker/#cases_casesper100klast7days (last visited Aug. 23, 2021).

### C. Federal Bureau of Prisons

The Federal Bureau of Prisons ("BOP") has taken the following steps to combat the virus. On March 13, 2020, the BOP modified its operations in accordance with its "COVID-19 Action Plan." *Federal Bureau of Prisons COVID-19 Action Plan*, Federal Bureau of Prisons (Mar. 13, 2020), https://www.bop.gov/resources/news/20200313_covid-19.jsp. Initially, all social visits, inmate movement, and official staff travel were suspended for 30 days. *Id.* Contractors who enter any BOP facility are screened for the virus and, initially, admission was limited to contractors who performed essential services. *Id.* The BOP also conducts enhanced health screenings for staff in areas of "sustained community transmission." *Id.* The BOP screens all new inmates for virus "exposure risk factors and symptoms." *Id.* Any new inmate who is asymptomatic but has had a risk of exposure is quarantined. *Id.* According to the Government, the quarantine period is for a minimum of 14 days or until cleared by medical staff. Opp. at 6. The Government indicates that new inmates who are symptomatic are placed in isolation until they test negative for the virus or are cleared by medical staff. *Id.*

The BOP also has a COVID-19 vaccination plan. *COVID-19 Vaccine Guidance*, Federal Bureau of Prisons Clinical Guidance (Mar. 11, 2021), https://www.bop.gov/resources/pdfs/covid19_vaccine_guidance_20210311.pdf. Inmates fall into different priority levels for vaccination: Priority Level 1 (for inmates in certain high priority jobs, including health service unit assignments); Priority Level 2 (inmates who are 65 or older or who are, according to CDC criteria, at an increased risk for severe illness from the virus); Priority Level 3 (inmates who are aged 50 through 64 or who might be, according to CDC criteria, at an increased

4

risk for severe illness from the virus); and Priority Level 4 (all other inmates).  *Id.*  As of August 23, 2021, the BOP had administered 211,794 doses of vaccine.  *COVID-19*, "Vaccine Implementation," Federal Bureau of Prisons, https://www.bop.gov/coronavirus/index.jsp (last visited Aug. 23, 2021).

The current BOP COVID-19 statistics are as follows:  (1) 478 inmates and 359 staff have confirmed positive tests; (2) 42,799 inmates and 7,165 staff have recovered; and (3) 244 inmates and 5 staff have died.  *Id.*  As of August 23, 2021, Fort Dix FCI has 0 positive inmate cases and 3 positive staff, 2 inmates have died, and 1,687 inmates and 95 staff have recovered.  *Id.*

### D.  The Parties' Arguments

King, age 44, asserts that he should be released due to the pandemic because he has asthma, is obese, and suffers from lingering effects of a 2015 car accident.  Br. at 1, 4.  At the time of his sentencing, King indicated that his physical health was fair except for some back pain as a result of a 2008 automobile accident.  D.E. 178 at 36.  He claims that medical care at Fort Dix FCI is inadequate.  Br. at 5.  King adds that he has poorly controlled hypertension.  *Id.* at 7.  He then points to the number of positive cases at his facility, referring to three different "waves" of infection.  *Id.* at 8-13.  King further indicates that he is eligible for release because he is non-violent, has not had any disciplinary infractions while incarcerated, holds a prison job, and has taken numerous educational courses.  *Id.* at 15-18.

The Government opposes Defendant's motion, indicating that King refused the COVID-19 vaccine on March 22, 2021.  Opp. at 5, Ex E at 21-22.  The Government notes that when King was admitted to Fort Dix FCI, he denied that he had hypertension or any respiratory issues; obesity was also not noted.  Opp. at 5, Ex. E at 1-4.  A month later, Defendant again denied that he had hypertension or respiratory issues.  *Id.*, Ex. E at 5-16.  The Government adds that King tested

positive for COVID-19 on January 5, 2021 but was asymptomatic. *Id.*, Ex. E at 19-20. King reported that he had asthma in April 2021, but he was not in distress and did not have shortness of breath. *Id.* at 5-6, Ex. E at 23. Defendant was, however, diagnosed with asthma and prescribed two medications. *Id.* at 6, Ex. E at 24-26. The Government submits that the 18 U.S.C. § 3553(a) factors also countenance against his release. *Id.* at 27-29.

In reply, King admits that he refused the vaccine but appears to indicate that he does not want to be genetically modified. Reply at 2-3. He also appears to claim that he self-diagnosed his obesity based on his height and weight. *Id.* at 3.

On January 16, 2021, King indicates that he wrote to the warden of Fort Dix FCI, seeking compassionate release due the pandemic. Br. at 2. King continues that the warden denied his request on February 4, 2021. *Id.* The Government does not dispute that King wrote to the warden but submits that King sought release due to back pain, indicating that he had contracted COVID-19 while in prison and the virus had made his back pain worse. Opp. at 4, Ex. C. In response, a Reduction in Sentence Coordinator at Fort Dix FCI did not reach the merits of King's application and instead asked him to resubmit his request with the appropriate category. *Id.* at 4-5, Ex. D. King never refiled his request and instead made the current motion.

## II.    LEGAL STANDARD

Following the passage of the First Step Act, Section 3582(c)(1)(A) now reads as follows:

> (c) Modification of an imposed term of imprisonment. The court may not modify a term of imprisonment once it has been imposed except that—
>
> (1) in any case—
>
> > (A) the court, upon motion of the Director of the Bureau of Prisons, or upon motion of the defendant after the defendant has fully exhausted all administrative rights to appeal a failure of the Bureau of Prisons to bring a motion on the defendant's behalf or the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility, whichever is

6

>earlier, may reduce the term of imprisonment (and may impose a term of probation or supervised release with or without conditions that does not exceed the unserved portion of the original term of imprisonment), *after considering the factors set forth in section 3553(a) to the extent that they are applicable*, if it finds that—
>
>>(i) *extraordinary and compelling reasons warrant such a reduction*; or
>>
>>(ii) the defendant is at least 70 years of age, has served at least 30 years in prison, pursuant to a sentence imposed under section 3559(c), for the offense or offenses for which the defendant is currently imprisoned, and *a determination has been made by the Director of the Bureau of Prisons that the defendant is not a danger to the safety of any other person or the community, as provided under section 3142(g)*;
>>
>>*and that such a reduction is consistent with applicable policy statements issued by the Sentencing Commission*; and
>
>(B) the court may modify an imposed term of imprisonment to the extent otherwise expressly permitted by statute or by Rule 35 of the Federal Rules of Criminal Procedure; and
>
>(2) in the case of a defendant who has been sentenced to a term of imprisonment based on a sentencing range that has subsequently been lowered by the Sentencing Commission pursuant to 28 U.S.C. 994(o), upon motion of the defendant or the Director of the Bureau of Prisons, or on its own motion, the court may reduce the term of imprisonment, after considering the factors set forth in section 3553(a) to the extent that they are applicable, if such a reduction is consistent with applicable policy statements issued by the Sentencing Commission.

18 U.S.C. § 3582(c)(1)(A) (emphases added).

The applicable policy statement of the United States Sentencing Commission is found in Section 1B1.13. U.S. Sentencing Guidelines Manual § 1B1.13 (U.S. Sentencing Comm'n 2018). The application notes to the section provide 4 circumstances that can be considered extraordinary and compelling: (1) the medical condition of the defendant, (2) the age of the defendant, (3) family circumstances, and (4) other circumstances constituting an extraordinary or compelling reason, either considered alone or in combination with any of the other three stated reasons. *Id.* cmt. n. 1(A)-(D). Certain courts have determined that the policy statement is not binding on courts in

connection with motions like the one at bar but have nevertheless found that the statement provides useful guidance. *United States v. Viteri*, Crim. No. 19-00044, 2020 WL 3396804, at *3 (D.N.J. June 19, 2020).

In the application note, the fourth consideration requires a determination by the Director of the BOP. *Id.* cmt. n. 1(D). Here, the Government does not contest that the policy statement should also apply when the motion is filed by a defendant, in addition to a motion filed by the BOP Director. The Court agrees. *See, e.g.*, *United States v. Rodriguez*, 451 F. Supp. 3d 392 (E.D. Pa. 2020).

Pursuant to Section 3582(c)(1)(A), the Court must also consider the relevant factors listed in 18 U.S.C. § 3553(a). They include the nature and circumstances of Defendant's offense, the history and characteristics of Defendant, the need for the sentence to provide just punishment, and the need to protect the public from future offenses by Defendant. *Id.*

### III. ANALYSIS

The Government first argues that Defendant has failed satisfied the statutory exhaustion requirement. The Court agrees. While he did make a request, he did not enter the correct category nor did he seek relief due the pandemic. And after he was notified of these deficiencies and informed that he could resubmit a proper request, he failed to do so. However, even if the Court were to reach the merits of King's motion, it would deny his request.

King argues that the pandemic and his asthma, hypertension, obesity, and back injuries increase (or potentially increase) his risk of suffering an adverse outcome should he contract the virus. The Court does not consider King's back issues because he has not shown how they make him more susceptible to COVID-19. In addition, the Court considered this information when it sentenced him. The Court also does not consider King's alleged hypertension because he has not

adequately established that he suffers from it. To the contrary, at sentencing and upon his entry to Fort Dix FCI, he denied having hypertension.

More importantly, the Court finds that Defendant has not met his burden as to extraordinary and compelling circumstances. King declined to be vaccinated. As a result, this Court joins the numerous other courts which have found that such a decision demonstrates that a defendant has voluntarily foregone an opportunity for self-care offered by the BOP. *See, e.g.*, *United States v. Baeza-Vargas*, No. Cr-10-00448, 2021 WL 1250349, at *2-3 (D. Ariz. Apr. 5, 2021) (listing more than a dozen decisions reaching the same result). Defendant has not provided any medical reason for refusing the vaccine (to the contrary, based on his stated medical conditions, he has additional medical reasons to receive it); he simply refused. *See United States v. Jackson*, No. 07-40-2, 2021 WL 1145903, at *2 (E.D. Pa. Mar. 25, 2021). Defendant is within his rights to refuse the vaccine, but any corresponding argument that he must be released because of potential complications were he to contract the virus rings hollow. *United States v. Jackson*, No. 15-cr-260(7), 2021 WL 806366, at *1-2 (D. Minn. Mar. 3, 2021); *see also United States v. Lohmeier*, Crim. No. 12-1005, 2021 WL 365773, at *2 (N.D. Ill. Feb. 3, 2021) ("[The defendant] cannot reasonably expect that prolonging his risk by declining vaccination will be rewarded with a sentence reduction."); *United States v. Figueroa*, Crim. No. 09-194, 2021 WL 1122590, at *5 (E.D. Cal. Mar. 24, 2001) (observing that if the court granted relief based on the risk posed by contracting COVID-19 after an inmate refused vaccination, the court would be endorsing a "unfairly perverse incentive"). In addition, Fort Dix FCI currently has 3 COVID-19 infections, so its earlier spikes have subsided.

The Court also agrees with the Government that the Section 3553(a) factors militate against release. The Court sentenced Defendant in January 2020, so the Section 3553(a) analysis

conducted then is still relevant and adopted herein. Defendant formulated,[3] and then recruited others, into his fraudulent schemes that lasted several years. Moreover, as discussed at Defendant's sentencing, King continued to rationalize and make excuses for his unlawful conduct. This attitude caused the Court concern that King would reoffend upon release. D.E. 178 at 29, 37. Finally, Defendant has served less than half his sentence, which also militates against release. On this point, the Third Circuit has made the following observations:

> We have not previously considered whether a district court abuses its discretion by denying a motion for compassionate release based on the amount of time remaining to be served in the inmate's sentence. But numerous district courts have taken this into account in considering whether to grant compassionate release. *See, e.g.*, *United States v. Bogdanoff*, No. 12-cr-0190-1, 459 F. Supp. 3d 653 (E.D. Pa. May 8, 2020) (denying compassionate release where the inmate had served only seven years of an 18-year sentence, and noting that the case was "much different than others where defendants [sought compassionate release] at the end of their sentence"); *United States v. Moskop*, No. 11-cr-30077, 2020 WL 1862636, at *1-2 (S.D. Ill. Apr. 14, 2020) (denying compassionate release where the inmate had served less than 10 years of a 20-year sentence and explaining that the "sentencing objectives of specific deterrence and protecting the public [would] not [be] fully served by less than 10 years of incarceration"). And at least one of our sister circuits has approved that consideration. *See Chambliss*, 948 F.3d at 694 (holding that a district court did not abuse its discretion in denying compassionate release based, in part, on the defendant's having served only 14 years of a 30-year sentence). We agree, as this consideration is consistent with the text of 18 U.S.C. § 3582(c)(1)(A), which, again, requires a court reviewing a motion for compassionate release to "consider[ ] the factors set forth in [§] 3553(a) to the extent that they are applicable." Because a defendant's sentence reflects the sentencing judge's view of the § 3553(a) factors at the time of sentencing, the time remaining in that sentence may—along with the circumstances underlying the motion for compassionate release and the need to avoid unwarranted disparities among similarly situated inmates—inform whether immediate release would be consistent with those factors. Hence we cannot conclude that the District Court acted unreasonably in

---

[3] As noted during Defendant's sentencing, the materials that outlined the schemes were not created by Defendant. But he then used the information to start his schemes. D.E. 178 at 33.

> determining that the substantial sentencing reduction required for granting compassionate release here—a reduction from 15 years to less than two years—would be inconsistent with the § 3553(a) factors.

*United States v. Pawlowski*, 967 F.3d 327, 330-31 (3d Cir. 2020) (footnotes omitted).

### IV. CONCLUSION

For the foregoing reasons, the Court denies Defendant's motion. An appropriate Order accompanies this Opinion.

Dated: August 24, 2021

John Michael Vazquez, U.S.D.J.

11